# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OTIS DOUGLAS, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 11-cv-5243 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| RICK HARRINGTON, Warden, ) | |
| Menard Correctional Center,[1] ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* petitioner Otis Douglas is an inmate in the custody of the Illinois Department of Corrections. He is serving a 70-year sentence for convictions on counts of first degree murder and home invasion. He has petitioned the court under 28 U.S.C. § 2254 for a writ of habeas corpus, arguing that his conviction was the result of violations of his Fourteenth Amendment right to due process and his Sixth Amendment right to effective assistance of counsel. For the reasons that follow, the petition is denied.

## Background

### I. Trial Court Proceedings

Douglas has not pointed the court to clear and convincing evidence that the state court's factual determinations were incorrect. Therefore, the court adopts them for purposes of reviewing his habeas petition. *See* 28 U.S.C. § 2254(e)(l); *Woolley v. Rednour,* 702 F.3d 411, 426-27 (7th Cir. 2011). The state court's factual determinations were set out in *People v.*

---

[1] Rick Harrington, the current warden of the Menard Correctional Center, is substituted as the respondent. *See* Rule 2(a) of the Rules Governing Section 2254 Cases; Fed. R. Civ. P. 25(d); *Rumsfeld v. Padilla,* 542 U.S. 426, 436 (2004).

1

*Douglas*, No. 1-03-2564 (Ill. App. Ct. Oct. 21, 2005)(Modified on Denial of Rehearing) (Respondent's Ex. A).

Douglas and the victim, Michael Carter, were involved in a love triangle with Donna Lindo. Carter and Lindo began dating in the early 1990s, eventually moving in together. When Carter moved to Maryland in February 1999, they continued their relationship long-distance. Later in 1999, Lindo met Douglas at a club and they began dating. Lindo testified that shortly thereafter, she told defendant about her romantic relationship with Carter. Douglas told Lindo that he lived with another woman and their child but that the relationship was not good. Douglas and Lindo began to see each other three times a week. However, Carter was planning on returning to Illinois to live with Lindo at her home in Des Plaines, Illinois. When Lindo told Douglas that Carter was "coming home," Douglas seemed upset. Douglas told Lindo that he wanted to continue their relationship after Carter's return, but Lindo refused. Nevertheless, Douglas spent the night at Lindo's residence on February 14, 2000. The following day, Lindo told Douglas that Carter would be visiting that week and asked him not to call her or come over to her house. Lindo testified that she did not know Douglas' last name or home address and only communicated with him by mobile phone.

Lindo expected Carter to arrive on the morning of February 17, 2000, and she stayed home from work that morning to wait for him and also to wait for a furniture delivery. Carter had not yet arrived when Lindo left for work at 10:00 a.m. after receiving the furniture. Lindo called Douglas on her way to work and they had a "casual conversation" about her new furniture. Carter called Lindo between noon and 12:30 p.m. to tell her he had arrived at her townhouse and was watching TV and eating crackers in the basement. Carter called Lindo a second time and told her that someone had been calling the house and hanging up when he answered. Lindo

suggested checking the caller ID, which Carter did and said the number was blocked. Lindo called Douglas and asked if he had been calling her home and hanging up, which he denied. Lindo talked to Carter a third and final time around 1:30 p.m. During their conversation, another call came through call waiting. Carter switched to the other call and then returned and told Lindo the phone was "messing up" at which point their call was disconnected. Lindo's repeated calls to her home went unanswered.

Between 3:30 and 4:00 p.m., Lindo's son called her as he customarily did when he returned home from school. Lindo asked him to see if Carter was in the basement. Lindo's son told her that no one was in the basement and that "red stuff" was on the floor and some speakers had been overturned. Lindo returned home to find splashes of blood on the walls of her basement laundry room and clothing on the floor. A handwritten note left on Lindo's bed upstairs stated: "Bicth [sic], when I come back I'm going to kill you." A jacket and luggage, later identified as Carter's, were also found in the bedroom.

Des Plaines police and evidence technicians testified that blood was found on the floor of the laundry room and throughout the room, including the utility sink. A plate of crackers was found on the floor near the laundry room. Footprints led from the laundry room to Lindo's bedroom where the note was found. Izzette Curtis and Wilton Jackson, Douglas' acquaintances, testified that Douglas was carrying an ax when he borrowed a car from them on February 17. Curtis and Jackson later found bloodstains on a tool found in the car's trunk. Police recovered a pair of jeans with bloodstains matching Carter's DNA in a search of Douglas' home on February 18.

Lindo testified that Douglas drove a white Lexus. One of Lindo's neighbors, Salvador Avalos, testified that he saw a white Lexus parked near Lindo's townhouse at about 2:30 p.m. on

3

February 17. On prior occasions, Avalos had seen Douglas in a white Lexus. Avalos identified Douglas in a police lineup. A second witness, Donald Donerson, testified that he saw a white Lexus in the townhouses' parking lot between 2 p.m. and 4 p.m. on February 17 and that he saw Douglas washing the car with a hose and cleaning out the trunk between 3:30 p.m. and 4 p.m. on that day.

The parties stipulated to the telephone records from Douglas' mobile phone and Lindo's home telephone. The parties also stipulated that Douglas cancelled his cellular service account on February 17 and received a new phone number.

On February 29, Carter's partially burned body was recovered from an autobody shop. Carter's body was headless and the forearms and lower legs had been severed. Stab wounds were also present on the chest and back. The deputy Cook County medical examiner who performed the autopsy testified that evidence of hemorrhaging in the wounds and inhaled blood in the lungs indicated the stab wounds were inflicted while Carter was alive. She also testified that the irregular nature of the wounds that severed Carter's head and limbs were consistent with being caused by an ax. While the limbs were severed after death, an ax wound near Carter's spinal cord showed signs of hemorrhaging, indicating that Carter was alive when that wound was inflicted. Photographs of Carter's wounds were shown to the jury.

The trial court instructed the jury that if it found Douglas guilty of first degree murder, it must then decide whether the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. The jury convicted Douglas of first degree murder and home invasion. The jury also found that Carter's death was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.

The trial court heard testimony in aggravation and mitigation before sentencing Douglas to an extended term of 70 years for the murder and a consecutive 30-year sentence for the home invasion.[2]

## II. Direct Appeal

Douglas received a new attorney on direct appeal. Douglas raised three primary issues on appeal. (Respondent's Ex. B). First, Douglas argued that his trial counsel was ineffective for failing to: (1) object to Donna Lindo's hearsay testimony about the substance of her phone conversations with Michael Carter on February 17, 2000; (2) request a jury instruction on concealment of a homicidal death, where counsel's theory of the defense was that petitioner was guilty only of concealing the homicide, petitioner had been charged with that offense, and counsel had conceded guilt of that charge; and (3) request a jury instruction defining the terms "brutal," "heinous," and "wanton cruelty," and explaining the factors to be considered in deciding whether a murder is "exceptionally brutal or heinous." Second, Douglas argued that the State failed to prove beyond a reasonable doubt that Carter's murder was accompanied by exceptionally brutal or heinous conduct indicative of wanton cruelty because the State did not present evidence of a significant criminal background, that the victim suffered, that Douglas lacked remorse, or that the murder was premeditated. Third, Douglas argued that the trial court failed to instruct the jury on definitions of "brutal," "heinous," and "wanton cruelty." The Illinois Appellate Court affirmed. *People v. Douglas*, No. 1-03-2564 (Ill. App. Ct. Oct. 21, 2005) (Modified on Denial of Rehearing) (Respondent's Ex. A). Douglas filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court, raising the issues of whether the trial court erred in failing to instruct the jury on the definitions of "brutal," "heinous," and "wanton cruelty" after

---

[2] Douglas was charged with first degree murder, home invasion and concealment of a homicidal death. Before trial, the State dismissed the concealment count via a *nolle prosequi*.

5

*Apprendi v. New Jersey,* 530 U.S. 466 (2000); whether the jury could have found Douglas guilty beyond a reasonable doubt that Douglas' conduct was brutal, heinous and indicative of wanton cruelty when it lacked evidence of Douglas' criminal history and instruction that it was not to consider wounds inflicted post-mortem when determining whether the offense was accompanied by exceptionally brutal or heinous conduct indicative of wanton cruelty; and whether Douglas' trial counsel was ineffective for foregoing instructions to the jury that could have aided in their determination of whether the offense was accompanied by exceptionally brutal or heinous conduct indicative of wanton cruelty. (Respondent's Ex. G). The petition for leave to appeal was denied. *People v. Douglas,* No. 101667 (Ill. 2002).

### III.  Collateral Proceedings

Next, Douglas filed a *pro se* post-conviction petition under the Illinois Post-Conviction Hearing Act, *see* 725 Ill. Comp. Stat. 5/122-1, *et seq.,* and combined petition for relief from judgment, *see* 735 Ill. Comp. Stat. 5/2-1401(f), presenting the following claims:

1. Douglas' sentence on the home invasion conviction was improper because home invasion was the predicate felony underlying the felony murder conviction, and thus was a "lesser included offense" of felony murder[3];

2. Douglas' sentence on the home invasion conviction violated double jeopardy because he had already been convicted of felony murder premised on that same home invasion;

3. Douglas' conviction for intentional and knowing murder should be vacated because the jury returned a "specific verdict" on felony murder;

4. Trial counsel was ineffective for failing to raise the errors outlined in claims 1-3 above.

---

[3] Douglas' argument incorrectly assumes that he was convicted of felony murder with home invasion as the predicate felony. He was convicted on a general verdict for murder, thus he was convicted of the most serious crime charged, *i.e.*, intentional murder. He was also convicted on one count of home invasion.

6

5. Appellate counsel was ineffective for failing to argue that trial counsel was ineffective for the reasons outlined in claims 1-3 above, and for failing to raise the issue of reasonable doubt and sufficiency of the evidence on the home invasion charge and the probable cause ruling made by the trial court. (Respondent's Ex. H).

The state circuit court denied each of Douglas' claims by a written order. (Respondent's Ex. I). The court also denied Douglas' motion for reconsideration. *Id.* Douglas appealed the denial of his post-conviction petition, arguing that:

a. The trial court erred in sentencing him on home invasion conviction where the jury's general verdict on murder made it unclear whether it was convicting petitioner solely of felony murder, for which home invasion was the predicate offense;

b. Trial counsel was ineffective for failing to request specific verdict forms for the different murder charges, and appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness on this issue on direct appeal;

c. The trial court erred in sentencing Douglas on a home invasion charge that the prosecution had dismissed by a *nolle prosequi*, and thus his conviction and sentence on that count are void; and

d. Douglas is entitled to one additional day of pre-trial sentencing credit.

(Respondent's Ex. K). The state appellate court affirmed. *People v. Douglas*, No. 1-07-2500 (Respondent's Ex. N). Douglas filed a petition for leave to appeal in the Illinois Supreme Court asserting claims that the trial court erred in sentencing him on the home invasion conviction because it was unclear from the jury's general verdict for murder whether Douglas was convicted of felony murder, for which home invasion was the predicate offense; that his trial counsel was ineffective for failing to request specific verdict forms for the different murder charges; and that

7

he was entitled to one additional day of pre-trial sentencing credit. (Respondent's Ex. O). The Illinois Supreme Court denied the PLA on March 30, 2011. *People v. Douglas,* No. 110761 (Ill. 2011).

**IV.     § 2254 Petition**

Douglas then filed the instant *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. After briefing on the petition was complete, counsel was retained for petitioner. She filed an appearance and requested time to file supplemental briefing, which the Court allowed. After allowing two additional extensions to file a supplemental brief and none having been filed, this Court set the matter for ruling. In his petition, Douglas asserts the following claims[4]:

Claim I: Petitioner was denied effective assistance of trial counsel where trial counsel:

(A) failed to object to the state's elicitation of hearsay testimony;

(B) failed to request a jury instruction on concealment of a homicide;

(C) failed to have the jury instructed on the definitions of "brutal," "heinous," and "wanton cruelty";

(D) failed to request specific verdict forms on the murder counts;

(E) failed to move to vacate the conviction on the home invasion count that was dismissed by *nolle prosequi*.

Claim II: Petitioner was denied effective assistance of appellate counsel where counsel failed to brief and argue that trial counsel was ineffective for failing to request specific verdict forms and for failing to move to vacate the conviction and sentence on the "nolled" count of home invasion.

Claim III: Petitioner was denied due process and a fair trial where:

---

[4] The Court will employ petitioner's numbering system for clarity rather than adopting the numbering system employed by the government to identify the claims.

(A) The trial court failed to instruct the jury on the definitions of the terms "brutal," "heinous," or "wanton cruelty";

(B) The state failed to prove beyond a reasonable doubt that the crime was accompanied by "brutal," "heinous," or "wanton cruelty";

(C) The 70-year extended term sentence for felony murder was improper because the underlying felony – home invasion – was based on a charge that was dismissed via a *nolle prosequi*.

## DISCUSSION

### I. Standard of Review

Douglas filed his petition for a writ of habeas corpus *pro se,* and the court will therefore construe the petition liberally. *See Gomez v. Randle,* 680 F.3d 859, 864-65 (7th Cir. 2012). To be entitled to a writ of habeas corpus, Douglas' petition must establish that the state court decision he challenges is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000). As the Supreme Court explained, a state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See Williams,* 529 U.S. at 405.

With respect to the "unreasonable application" prong under § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of United States Supreme Court precedent is unreasonable if the court's decision was

9

"objectively" unreasonable. *Harrington v. Richter*, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011) ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable").

## II. Douglas' Claims

### 1. Procedural Default

For this Court to consider his claims, Douglas must have given the Illinois state courts, a fair opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). "Fair presentment 'requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court.'" *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) (quoting *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001)). Failure to fairly present the claims to the state courts results in procedural default barring federal review. *Id*. Procedural default ordinarily precludes federal review of the merits of a habeas claim when either "(1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). This rule applies to both direct and collateral proceedings. *White v. Godinez,* 192 F.3d 607, 608 (7th Cir. 1999).

Douglas concedes that he has procedurally defaulted on the following claims: Claim I: A, B, D, and E; Claim II; and Claim III: C. A review of the record confirms that Douglas has procedurally default on these claims. In his opening brief, Douglas does not address these defaults and therefore does not argue that either exception applies. In his reply brief, Douglas argues that, despite the default, this Court should review two issues: (1) that he was denied

effective assistance counsel where trial counsel failed to object to the hearsay testimony and appellate counsel failed to include that issue in the PLA to the Illinois Supreme Court; and (2) Douglas was denied effective assistance of counsel where trial counsel failed to move to vacate the conviction on a "nolled" count of home invasion and appellate counsel failed to include the issue in the PLA to the Illinois Supreme Court.

This Court may decline to excuse the defaults based on Douglas' failure to address the issue of default in his petition. *See Crockett v. Hulick,* 542 F.3d 1183, 1193 (7th Cir. 2008). However, even in his reply brief Douglas has not shown good cause for the default, actual prejudice from the alleged error, or that failure to consider this claim will result in a fundamental miscarriage of justice. *See Badelle v. Correll*, 452 F.3d 648, 661 (7th Cir. 2006). Cause for a default usually is established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts. *Lewis v. Sternes*, 390 F.3d 1019, 1025-1026 (7th Cir. 2004). "Prejudice is established by showing that the violation of the petitioner's federal rights worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id*. (internal citation omitted). Douglas has not shown any such impediment or substantial disadvantage.

   2.    **Non-cognizable Claim III: A**

Douglas argues in Claim III: (A) that the trial court did not properly instruct the jury on petitioner's eligibility for an extended-term sentence where it failed to provide the definitions of the terms "brutal," "heinous," or "wanton cruelty." A state's criminal judgment is only susceptible to collateral attack in federal courts where there non-compliance with federal law. *Wilson v. Corcoran,* 131 S Ct. 13, 16 (2010). "[E]rrors of state law in and of themselves are not cognizable on habeas review." *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Perruquet,* 390

F.3d at 511. Instructional errors are considered errors in the application of state law, which are beyond the scope of federal habeas review. *See Taylor v. Gilmore,* 508 U.S. 333, 344 (1993); *see also Estelle,* 502 U.S. at 71-72; *Perruquet*, 390 F. 3d 505, 511 (7th Cir. 2004). Douglas' own argument supports the conclusion that this is a purely state law claim. He argues that the Illinois Supreme Court has clearly defined these terms and therefore the trial court was remiss in failing to instruct the jury on the definitions. Accordingly, as to this claim, this Court finds there is no federal issue for this Court to review.

        3.        **Merits of Claim I: (C) and Claim III: (B)**

Both of Douglas' claims in Claim I: (C) and Claim III: (B) were adjudicated on the merits in the state court proceedings. The Antiterrorism and Effective Death Penalty Act (AEDPA) is a relitigation bar preventing federal habeas review of claims adjudicated on the merits in state court unless the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." 28 U.S.C. § 2254(d)(1)-(2). The relevant state court decision for review under the statute is that of the last court to consider the merits the claims. *Charlton v. Davis,* 439 F.3d 369, 374 (7th Cir. 2006).

The Illinois Appellate Court on direct appeal was the last court to consider the merits of Claim I: (C), which asserts that Douglas' trial counsel was ineffective for failing to request that the jury be instructed on the definitions of "brutal," "heinous," and "wanton cruelty." Douglas was sentenced to an extended term of seventy years on his first degree murder conviction based on the jury's finding that his conduct was "brutal or heinous," and "indicative of wanton cruelty." In finding that Douglas' trial counsel was not ineffective for failing to request that the

12

jury be instructed with definitions of these terms, the Illinois Appellate Court applied the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). Therefore, the decision was not contrary to federal law such that this Court may review it under section 2254(d)(1).

The state appellate court's holding on this claim was also legally and factually reasonable under the circumstances. "We begin with the presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Pole v. Randolph*, 570 F.3d 922, 941 (7th Cir. 2009). Douglas has not overcome this presumption.

The trial record demonstrates that Douglas' counsel's theory of the case was that Douglas was involved only in the concealment of the murder that was planned and executed by Lindo. Defining the terms "brutal," "heinous," and "wanton cruelty," for the jury would distract from that position and focus the jury's attention on the details of the murder itself. The jury had heard evidence that investigators found Carter's blood on Douglas' pants and in the trunk of his car; that he was seen with his car at Lindo's townhouse around the time of the murder; and two of acquaintances, from whom he borrowed a car, saw Douglas with an ax. Counsel therefore could not reasonable argue that Douglas was in not involved in any way, but his best defense was to minimize attention to the details of Carter's murder. This strategy is demonstrated in the instructions conference in the trial court. Defense counsel objected to the State's proffer of instructions defining "brutal" and "heinous" as unduly prejudicial because the any murder could fit the proposed definitions. (Respondent's Ex. W at 1113-14).

The record amply shows that defense counsel's decision to object to any definitions being given to the jury was the product of trial strategy to de-emphasize Douglas' role and to highlight Donna Lindo as the probable murderer by undermining her credibility, therefore this Court finds

13

that Douglas has not overcome the performance prong of *Strickland* and that the state appellate court's decision was reasonable under section 2254(d)(1). Since Douglas must prevail on both prongs of *Strickland* in order to show that he was deprived effective assistance of counsel in violation of his Sixth Amendment rights, this Court need not address the prejudice prong.

In Claim III: (B) Douglas asserts that the prosecution did not prove beyond a reasonable doubt that Carter's death was accompanied by "brutal or heinous behavior indicative of wanton cruelty." Douglas argues that the prosecution failed to present evidence showing that: he had little or no criminal history; he lacked remorse; the murder was premeditated; and that Carter suffered prolonged pain. Douglas further argues that any wounds inflicted post-mortem should not have been considered as part of the calculus for "brutal or heinous." The Illinois Appellate Court considered these issues on direct appeal and affirmed Douglas' conviction.

The state appellate clearly analyzed the sufficiency of the evidence in light of the Supreme Court's holding in *Apprendi v. New Jersey,* 530 U.S. 466 (2000). After *Apprendi v. New Jersey,* any factual finding which increases a defendant's sentence beyond the maximum permitted by statute by statute must be proven to a jury beyond a reasonable doubt. 530 U.S. 466, 490, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Moreover, the state appellate court considered the evidence presented in light of the post-*Apprendi* cases considering the relevant factors for determining whether Douglas' behavior was exceptionally brutal or heinous indicative of wanton cruelty, including criminal history and remorse. The appellate court noted that Douglas acknowledged that the State presented evidence of premeditation. (Respondent's Ex. A at 22). Citing with approval the dissenting opinion in *People v. Lindsey*, 247 Ill. App. 3d 518, 536-38, 617 N.E.2d 389, 399 (1993)(Doyle, J., dissenting), the court also found that the jury was not required to consider Douglas' criminal history in determining whether he was eligible

for an extended-term sentence because the trial judge considered his criminal record when sentencing Douglas. The court held:

> Having considered the senseless nature of Carter's murder and the extent of his injuries, we conclude that the jury was presented with evidence that was more than sufficient to support a finding that the crime was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. The evidence established that Carter received multiple stab wounds to his neck and spinal cord while he was still alive. The medical examiner testified that one of the neck wounds inflicted before Carter died was consistent with being produced by an ax. The evidence further showed that Carter's arms and legs were severed with an ax after he died. Defendant's conduct was devoid of mercy or compassion.
> (Respondent's Ex. A at 23).

Even though the appellate court did not set forth the standard by which it reviews challenges to the sufficiency of the evidence, that omission does not mean the decision is contrary to federal law. *See Mitchell v. Esparza,* 540 U.S. 12, 16 (2003). While reviewing the evidence in the light most favorable to the prosecution a "court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). The court's opinion is consistent with this standard and therefore it is not "contrary to" the relevant federal law.

The state appellate court's decision was also factually and legally reasonable. Douglas contends that the prosecution failed to present evidence showing that: he had little or no criminal history; he lacked remorse; the murder was premeditated; and that Carter suffered prolonged pain. Douglas further argues that any wounds inflicted post-mortem should not have been

15

considered as part of the calculus for "brutal or heinous." The appellate court found as a matter of state law that evidence of Douglas' criminal history need not be presented to the jury because it was considered in the second part of the *Apprendi* analysis by the court to determine the sentence. This Court is unable to grant relief by reversing a ruling based on state-law. *See Curtis v. Montgomery,* 522 F.3d 578, 582 (7th Cir. 2009).

Douglas conceded in his appellate brief that the State had presented evidence of premeditation. (Respondent's Ex. B at 40). Therefore, Douglas' complaint that they did not do so is rebutted by the record. With respect to remorse, the state appellate court noted that the record was devoid of any evidence of remorse and Douglas did not point that court to any evidence of regret nor does he do so now. These factual determinations by the court were reasonable and have not been controverted by the record or by Douglas in these proceedings.

Lastly, Douglas asserts that the prosecution presented insufficient evidence of Carter's suffering to prove beyond a reasonable doubt that the behavior was brutal or heinous. Viewing the evidence in the light most favorable to the prosecution, as the court must when reviewing the quantum of proof, any rational trier of fact could conclude based on the physical proof and the medical examiner's opinion that Carter suffered repeated knife wounds and at least one ax wound to the neck while alive. The medical examiner testified that the hemorrhaging around the wounds was consistent with Carter being alive when they were inflicted, including an ax wound to the neck. Therefore, even if the post-mortem severing of Carter's head and limbs is excluded from the determination, any rational trier of fact could reasonably find that Carter suffered immeasurably and that Douglas' behavior was brutal or heinous and indicative of wanton cruelty. Accordingly, the state appellate court's decision was factually and legally reasonable and Douglas is not entitled to relief under section 2254(d).

4. **Certificate of Appealability**

Douglas has not made a substantial showing of the denial of constitutional right, which would entitle him to a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,*529 U.S. 473, 484 (2000). This Court therefore declines to certify the issues here presented for appeal.

## CONCLUSION

Douglas' Petition for Habeas Corpus pursuant to 28 U.S.C. § 2254 is denied.

IT IS SO ORDERED.


DATE: August 1, 2013

Sharon Johnson Coleman

United States District Court Judge